Thank you, Your Honors. James Friedhofer, appearing for Southern California Stroke Rehabilitation Associates. I'm here today with my co-counsel, Steven Tomasulo, who will not be arguing, so it will just be my argument today. The main issue in this appeal is fairly straightforward, and the question is whether there was a jury question on the question of whether the buyer in this case took such steps as may reasonably be required to notify the seller. And so while that's a very simple statement, the interesting part of it comes in, before looking at the evidence, you have to decide what the standard means. And because the wording used is just notify or notice, there's been a great deal of commentary and also case law regarding what the purpose of this statute is. As a matter of fact, three years ago, this very court addressed this California notice provision in the case of Alvarez v. Chevron Corporation. And I think that the court appropriately selected and crafted the interpretation based upon what was the purpose of the statute. And that's what I would like to focus on in my initial comments today, with the to look at this legal standard with an emphasis and eye on the purpose. And in California, perhaps the starting place for us is the Cardinal Health 301 case, where the court stated that the primary purpose is twofold, to give the buyer, excuse me, to give the seller an opportunity to cure any breaches, and then also to give the seller an opportunity to avoid litigation by entering into some sort of settlements. I think the next stop in California would be KC 1243, and the parties don't seem to have any quarrel as to whether that is a proper statement of California law. And it states — Justice, can I — Sure. — just looking at this letter, because that's the entire notice, right? Our argument is going to be no, that that is not the entire notice. Do you think their letter back is noticed? Well, not only that, Your Honor, the totality of the interactions between the party has to be considered. And I think that if you want to go straight to the evidence on that — Doesn't the notice have to be in writing, though? No. That's a very important aspect of this, is that the statute itself does not say that it must be in writing. So there was — there were oral communications you're saying? I believe that oral communications can be relied upon by the jury. And there were some here? I think that there was strong evidence of that. Okay. That is not me. So maybe just focus me on what's the evidence that there were oral communications that went beyond what was in this letter? Okay. The first thing that I would point the Court to is that, as my co-counsel will state when he comes up, this is a long litigation between the parties, very long. There has been eight years prior communication, and the parties weren't even speaking to one another directly. They were speaking through lawyers for eight years before this. And at the end of that, in Judge Byrne's April 24th order, he says — he talks about this very issue that's going to come up. I mean, it's a very precedent statement. He talks about how Sukumar overtly signals the possibility he will sue over warranty disputes that may develop between the plaintiff and defendants with respect to this subject equipment. It was so apparent to Judge Byrne's that the parties knew what was going on here, he could predict the future. And he very accurately predicted that. And I think that when you're talking about — Well, I guess the question to you is, focus me in on the evidence of these oral communications that you say constitute notice under the statute. And all you've told me about is what Judge Byrne said. Well, I would — yeah, and I would say that what he said indicates that there's been oral communications in that case. Well, where's the evidence in the record that you're going to point me to that I can go look at? Your Honor, all that I can point you to is that statement in the — Okay, because then I don't think that's good enough. So I'm looking at your letter, and all this letter talks about is these waitrees. Right? Okay. So maybe — maybe the letter was adequate notice that you were going to bring some breach of warranty claim, again, with respect to the waitrees. But are you saying that it was also notice as to a bunch of other equipment that's not mentioned? Your Honor, I think that it is. And it goes to the point of you have to look at how — what is our requirement for the notice? Because if I'm reading your approach to this case, you're taking much the approach that Judge Benjavengo did and said that, look, I think that in order to comply with this statute, in order to even get to the jury on the question, I'm looking for something in writing, I'm looking for a list of what the defects are with the products, and I'm not really going to consider anything that's happened in the litigation between these parties prior, and I'm not going to look to what's going to happen in the future regarding the other side saying, don't bring us any claims. And if you look at it in that frame — that framework, I can see your concern. Your concern is, I'm just looking narrowly at that exhibit. And I do have an argument that I will — I'll address that argument first. The argument is that this is all part of one large transaction. All of this equipment was bought at the same time. And it was also — Has any of it been paid for? You know, that question — I don't know the answer to that question. When I looked at the record, it seemed to me like somebody doesn't want to make these payments, and so we're here, you've got this wrong, you've got that wrong, you've got this wrong. Somebody grows this, this is a different color. And I was just curious. I thought, hmm, I don't think this has been paid for. Now, that's not going to turn the case. We're going to decide this case on the record before us. That was just one judge reading and wondering. As far as your curiosity, I think that I would point that curiosity in the direction of that this client is very exacting. And one of the — I think that it's not that the client doesn't want to pay for the product, but the client wants a lifetime warranty. And I believe that the client believes that he purchased a lifetime warranty. And that's what's really the motivating factor here, rather than avoiding any payments. Because certainly, there's been many payments over the purchase price of this equipment based on, you know, the cost of litigation. But — Can I just tell — I'll be up front with you. Sure. My mindset in looking at this case, because you're going to tell me I need to look at it from a different frame. So I look at this as they haven't — your client had an issue with this replacement set of equipment that was part of Judge Burns' order. And all that this letter says is we are not happy with the replacement weight trees, and we might go back to Judge Burns and get some further order saying that you better do something else to comply with the judgment that he's entered. Not that I have a breach of warranty claim with respect to all of this other equipment that's not mentioned that I might sue you for. And I thought that's what the statute required. Well, no, I think that the statute in Casey does say that did the buyer take the reasonable steps to notify this? And I don't think that that means that you list out all these things. And the commentary talks about, you know, that the matter is troublesome and must be watched. And so if you approach it from that broad perspective, that this is not a gatekeeper statute. This is just to make sure that there's communication between the parties. I think that the communication was ongoing. And even at the time — let's look at the next letter, which is Exhibit 12, to see how this — what impact this letter had on the seller. Because when — Is Exhibit 12 the letter that — Is Mr. Kern's reply letter, yes. And so when — in order to understand what, you know, 11 was, I think you have to read it in conjunction with 12. And when Mr. Sukumar, through his counsel, started saying, okay, now I want to talk about the weight trees, I want to talk about the chips — there's chips here, there's paint and whatever, the answer letter was not addressed simply to those points. The answer letter went way beyond that. The answer letter talks about the whole totality of the problems that were ongoing in the matter. And under that — I mean, counsel's using things like beyond a shadow of a doubt that anything that we do to cure is not going to be satisfactory to, you know, to your clients. And that, you know, we are not going to do anything regarding any clients. And so don't submit those to us. You know, we're not going to do anything absent of court order. And I think that that shows the mentality on how he looked at, you know, Exhibit 11. It wasn't just that, oh, this is somebody complaining of one isolated or two or three isolated instances. This is, I can see where this is going, and I'm going to shut it down. And then, in reliance — He was right. He was. He was right. He was absolutely right. But isn't that notice? Isn't notice telling you what's going to happen in the future so that you have an opportunity to say, well, since I know what's going to happen in the future, why don't I try to take some action here to cure the defect? But he was on notice that this was never going to end, not that he had notice that you were going to bring breach of warranty claims for this specific equipment or that specific equipment. Well, I think to adopt your approach, which is — that you're suggesting, which is that reading 11 and 12 and not looking at any of the other factors, if that's how you should interpret this statute, I think that you have to reject an awful lot that's in Comment 4 to the official comments to the UCC statute. You have to reject an awful lot of that, because they talk about it being a low threshold that it's like all — this isn't — this isn't to stop a good-faith consumer claim. This is just to prevent bad-faith commercial tactics where people sue, and they've never been in communications with one another. And they use this language that the transaction is troublesome and should be watched. Well, you cannot harmonize that language with the communication with 11 and 12. You cannot read 11 and 12 and think that this matter is not troublesome and should not be watched. So that's — and that's where this case comes down to. It comes down to what is the interpretation of notify? Is it the broader, you know, the approach from the UCC, or is it the much narrower approach that you're suggesting that Judge Piedramongo did? And so I think that's it. Okay. Well, let me ask you this, then. Am I wrong in thinking that if you're not just complaining about the wait trees and  of the prior litigation, why weren't you required to bring all of your claims relating to that equipment in the earlier litigation? Why do you get to start all over in this lawsuit? Well, because we were foreclosed from it by Judge — Judge Byrne's order. I believe that Judge Byrne's had a reason for putting in his April 24th order that the breach of warranty claims are not part of this litigation. I think that's because the parties were trying to get him to make something and probably let him. But they weren't part of the litigation because you didn't bring them. Well, but — You were required to. You can't claim split. Well, okay, you've now — you've now jumped the fence over to the res judicata issue. That's what I was trying to do. Yes. Right. And you have. And the problem with that is that it's a completely separate issue from the notice issue, and it's a completely different question on whether there's a jury question for res judicata. The trial court said that there is a question. And there was no cross appeal on that point. And so — Well, they don't have to cross appeal to preserve their victory. The only cross appeal is if you want greater relief than what you obtained. Okay. Well, but — but — You can't affirm on any ground. Well, if we go to that idea, the parties really — I mean, that wasn't part of the briefing of the parties, I think, regarding — Well, regarding — regarding the res judicata issue, and I have only a brief amount of time to address it. The — the idea of whether there was a lifetime warranty, and the extent of those — that warranty was, first of all, not an issue that was submitted in the prior litigation. And second of all, the litigation that happened in this case concerned later manifestations of — of the — the state of the equipment as it was in the first litigation. It could not — and the law is you cannot sue on matters until you've been damaged, until the harm has manifested itself. And so that's the difference in this case, that the — the defects that are being sued upon had to deal with the manifestations that came after the first litigation. So they only arose after the prior litigation? They arose after it, but they clearly were on the radar. Everybody was on notice that that was — that was possibly coming down the pipe. And then, as the res judicata issue — So they knew about the claims, but they hadn't arisen? Yes. Is that what you're telling us? Like — like, an example is, if — if I know somebody going to Idaho, I say, well, it's winter up in Idaho. It's cold up there. You better take coat. And that's notice — You'd be wrong, other than that, anyway. Well, there's the problem with giving notice, I guess, in predicting things. But — but the idea, though, is that even though it's not time to put that coat on, that you can see it coming down the — the road, and that's why you give notice. And — I think we've heard your argument, Counselor. Thank you very much. There's one sale you wish you hadn't made, I suppose. Oh, sure. Go ahead. Thank you very much, Your Honors. May it please the Court, my name is Patrick Kearns. I represent Nautilus. You may have heard my name before, since it's been mentioned now, as I'm the author of a couple letters. But let me first say thank you for allowing us the opportunity to argue here today. There's a few things that my colleagues at Appellant's Counsel raised that I want to — that I want to discuss in particular, because I think that, to some extent, there's — there's something missing here. And that is not only the raised judicata issue that — that, Judge Walker, that you — that you raised, but it's the fact that the raised judicata issue pervades everything about this case. It pervades everything about the notice issue. Because what needs to be understood at the outset is that Appellant's avoided summary judgment on a single ground, at least summary judgment with respect to the main part of the claim, the raised judicata and collateral estoppel claims. They avoided summary judgment on a single basis, and that's the fact that they had an expert declaration that said, all of the defects, all of the issues that are the subject matter of this warranty litigation are new. They didn't exist at the time the direct focus case was going on. So it really just begs the simple question, if that's true, how could a letter or my response or any conduct that took place during the direct focus litigation constitute statutory notice of something that does not yet exist? That's the simple fact. That's the corner that they painted themselves into to survive summary judgment, and it — and it worked, and they got to trial, and their expert said, and it turns out there were no new defects. Their expert testified on the stand. He found no differences between the machines, no new defects that he located between his analysis in 2007, which was his direct focus case, and his analysis in 2010 in the breach case. So even at trial with evidence we confirmed, how could he have given notice? They're in a difficult position. They can't give notice of something that doesn't exist, and yet their claims have a statutory requisite element that they provide notice. If you look in the record, Your Honor, and I cited this in my brief, the plaintiff himself even testified on the stand. He said, yeah, I'm not aware of any notice given. There really is no fundamental dispute here that actual separate notice saying, we have an issue with these machines about a breach of warranty that have arisen since the end of the direct focus case was given. That's really functionally undisputed. I think what the appellants are effectively asking this court for is to change California law. The statute is very clear. It's very straightforward. It says you have to give notice. This court has addressed the issue. Appellants' counsel raised it, the Alvarez v. Chevron case, which is a case, Your Honor, Judge Smith, you were on the panel for that decision. And this case said, yes, not only is notice required under the California Commercial Code 2607, but it has to be pre-suit notice. The interesting thing I found about that case as well, and this is sort of applicable, is the court noted right before it discussed, the court in Alvarez was discussing sort of overturning or at least sort of criticizing a prior decision which may have allowed sort of in-suit notice. And the court noted that its role in these kind of cases is to ascertain and apply existing California law. Well, existing California law, as it stands here today, requires notice. And appellants' counsel is suggesting that they should be excused from it, but there's no support for that. There's no case law for that. Or they apply or they ask this court for some other justification to ignore a fundamental element of their claim. Now, oh. What are we supposed to make of Judge Burns' comment about this breach of warranty litigation that might be coming down the pipe? Fantastic question. I'm glad you answered that, Your Honor. Ask it. What is the answer? Why don't you tell me? I'm glad you asked it. It is difficult for me to walk the thin line of this record because we've been involved in this litigation for so long. However, what I can tell you is that during the procedures that were post-trial in the direct focus case, the four or so years of special master procedures and things of that nature, there were several hearings, and several motions, and I mean I couldn't even begin to list the amount of filings that went on during that period. I am personally aware, for example, of issues being raised about the concern that Judge Burns' order adopting the special master's R&R, which was kind of functionally the last order in the case, even though it wasn't. But there was a concern that by adopting that, there was a portion in there that effectively told the parties to stay away from each other. In fact, the special master put it in much more stark terms. I mean, he was diplomatic about it, but Justice Weiner said the parties should try and limit their future contact from now on. And when Judge Burns adopted that language, there was an objection raised by the appellant that that may infringe upon their future rights because it would be, I'm forgetting the legal term as I stand here today, well, in any event, it would put these restrictions on their rights to exercise warranty issues. And for example, that may very well be true to this day. Let's say a part fails and they send a letter to Nautilus and they need a new bracket or something along those lines. And so there was definitely a signal that there may be a warranty problem in the future. And I think Judge Burns was absolutely correct when he said, yeah, listen, Sukumar is signaling that he's probably going to sue these people in the future because he's been suing them since 2000. Judge Burns is also aware that the appellants had sued Nautilus in other forms during this time frame. And so I think Judge Burns appropriately acknowledged it. There was no way, and I can assure you, and I think the record will reflect, at least by an absence of information, there's no way Judge Burns could have been aware that they were raising a warranty issue that either, A, they claimed didn't exist, or B, one that would somehow fall outside the raised judicata analysis. And here's what's very interesting. If you look at Judge Burns, I don't have it in front of me, but it's in the record. I can grab it if you'd like. If you look at Judge Burns' full quote when he says that, when he makes that statement about Sukumar, I may mess it up a little bit, okay, but Sukumar overtly signals that he may bring an action for warranty claims. His next sentence is very telling, and I'm doing this from memory. I recall it. His next sentence was, to the extent that those wouldn't be precluded on raised judicata or collateral estoppel grounds, this opinion doesn't encompass those issues. Here we have a situation where everything is completely included in raised judicata or collateral estoppel grounds. If you believe our side of it, if you believe their side, this is the proverbial rock in a hard place that I mentioned in my brief. If you believe their side, no, this couldn't be collateral estoppel. It couldn't be raised judicata because there are new issues. These issues weren't the ones that we litigated before Judge Burns. These issues arose after. Well, then we have a complete lack of notice, and I think that they would have a difficult time, frankly, contesting that fact because as appellant's counsel discussed with this court when he stood up here, we're talking about Trial Exhibit 11, which was a letter from appellant's counsel to myself back in 2008, and then Trial Exhibit 12, which was my response right next. Those were undeniably letters that were sent during and about the direct focus litigation. The captions mentions as much. Judge Watford, you raised the weight trees issue, which I find a fascinating issue because when you look at those letters, it wasn't just that there was sort of a humorous mention that I was right or the author was right. It wasn't just that I was right. When you look at the letters and appellant's counsel said, and if you can't sort of glean this or if you haven't looked at the letter in a moment, what ended up happening was that there was a court order that Nautilus go to a certain facility and make various remediations in person on these machines. And the letter from appellant's counsel references the visit on May 27. He said it didn't go very well. He says it didn't go very well. Exactly right. And then he goes through several actual issues. Some of them I'll represent to you. It doesn't really matter, but some of them were much bigger than others, okay, from an actual work standpoint. But he talks about the Smith machine, the crossover machine, resistance to user labels, all these issues that were really at the core of the direct focus case. And then he brings up the weight tree issues, which the weight trees had been a discreet subject, heavily litigated, an issue for the special master, an issue for Judge Burns. I mean, this was not something new. This was something that we had been dealing with for a long time. If maybe Nautilus's or perhaps my own frustration isn't evident from the response letter, I mean, it's something that we were certainly dealing with. The interesting thing I find from these letters, however, though, is sort of in the end. At the end of the initial letter, it says, Truth is, Patrick, we have no interest in a tussle on these issues or filing a further motion before Judge Burns. Well, when I responded, I basically said, We're not going to come back and fix these things that we just fixed. Nautilus isn't going to come back and try and comply with an order it believes it complied with. We're not going to do any more things for you. You'll have to go to Judge Burns. And what happened? He did. I had the district court in this present case take judicial notice during our argument of this below. The court took judicial notice of the docket in the underlying matter to show that just within a week or so after my response letter, they filed a motion to enforce the judgment in the district court making these very same complaints. What was the outcome? The outcome was, technically speaking, it was granted in part and denied in part. We basically, this is outside of the record, Your Honor, because we didn't put that transcript, but we basically agreed to a compromise. We sent them a couple things in the mail that they could attach, and that was the end of it. Shortly thereafter, that was, the final order had already been entered, so there was sort of a post-final order motion for judgment, or motion to enforce the judgment, and then that final order from Judge Burns. And then they, appellants, appealed that decision as well, which had resulted in three separate notices of appeal, and then they were consolidated. And that was a decision that this court had in front of it as well. So, I mean, we've been here before. But the point of this, Your Honor, the point, the reason I raised the motion to enforce the judgment, these letters weren't something that Sukumar was giving to us saying, hey, we're going to sue you in the future. We have an issue with some warranty claims we've never told you about, and here's what it is. These letters don't provide the opportunity for Nautilus to evaluate those claims. It didn't provide the opportunity for Nautilus to assess settlement options or to prepare for litigation. All of the delineated purposes behind the statute that appellants counsel address in their brief, all of those purposes, all of those fundamental reasons for this notice, Nautilus was deprived of that fact because they were in litigation, because they kept bringing motions to enforce them, and because those motions were ruled upon one way or the other. Mr. Sukumar didn't rely on some inducement by Nautilus to somehow not give notice. He litigated the issue. That's not reliance. That's just exercising his rights to litigate it. And now we're presented with a situation where they're saying, no, that should be notice of all future possible things. Mr. Sukumar and SESRA shouldn't have to prove the elements of their case because Nautilus defended it once and shouldn't have to defend it again. I mean, or shouldn't be able to defend it again. And that's really what I see their argument as being. But there's just no authority for it. What you see is that this court's ruling in this case, so far as you're concerned, he's going to come back and rebut. So give it in a sentence and then let him tell us why that's not so. I think the appellant has failed to put forth any evidence or demonstrate that there's any evidence in the record that they gave actual statutory notice. I don't think this court is authorized to ignore the fact that that is a requisite element of the plaintiff's claim and that there is no authority, case law or otherwise, that would allow him an exception to that, that would allow him an excuse for not meeting the elements of his claim. I think that this court is also authorized to affirm the judgment on any correct grounds that are set forth in the record. And I think that this record shows that each and every one of their claims is barred by either collateral estoppel or raised judicata. I think that that would be a perfectly appropriate decision for this court to make. The trial court below didn't get there but noted specifically in her ruling that it impacted the notice issue, which I think it does. I think the raised judicata analysis sort of sets the parameters of where they can argue notice actually existed. If it was during the direct focus case, which it was, it would be raised judicata. I think the trial court essentially gave them the benefit of the doubt and said, since you argued that these are new defects that have existed only since the end of the direct focus case, now show me your evidence. And there is none. As Judge Watford, as you pointed out at the beginning, even an oral statement, there is none. There's the opposite. There's the plaintiff himself at trial saying, I'm not aware of any notice. Plaintiff's counsel didn't meet the fundamental elements of their claim, and everything else sort of is interesting, but I don't think it can support a reversal. I thank you once again, Your Honors, for your time. I really appreciate it. This has been great. Thank you very much. Thank you. You want to go straight to everybody? Are we in the deficit? We are, aren't we? We are. I'll give you 30 seconds. Your Honor, did you want me to address this specific question? I didn't want you to address it. I want you to tell us why it's not right. Okay. I envision that this Court's opinion is going to state what is the standard for notification. And I would want that, what follows from that, to address the question of when Mr. that your client will continue to find deficiencies with respect to virtually any action, product, position, or remediation offered by Nautilus, why does the jury not get to decide whether that's notice, or that says I don't want any more notice, or not? Because I think that it boils down to when the standard, you have to decide whether it's a jury issue or not. And other than that, anything that I would say would be reiterating my former points. Thank you. Thank you. Appreciate your argument, both of you. This case is submitted. And this morning's session is adjourned. Thank you very much. Thank you. Thank you.
judges: Farris, Smith, Watford